## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| LISA L. MARKOE, | CV 08-499-S-REB |
| Petitioner, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Respondent. | |

Currently pending before the Court is Lisa L. Markoe's Petition for Review (Docket No. 1) seeking judicial review of the final decision of Respondent denying her claim for disability and disability insurance benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

Lisa L. Markoe ("Petitioner" or "Claimant") applied for Social Security Disability and Social Security Income benefits on May 24, 2006 alleging disability beginning May 15, 2005. (AR 99-104). Petitioner's applications were denied initially (AR 73) and again after reconsideration (AR 80-83). Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (AR 86). The ALJ held a video hearing on February 26, 2008 from Billings, Montana, and Petitioner appeared in Boise, Idaho. (AR 18, 20, 90).

**MEMORANDUM DECISION AND ORDER- p. 1**

At the hearing, the Petitioner testified, along with mental health expert, Michael Dennis, Ph.D.; and vocational expert, Beth Cunningham.  (AR 18).  Petitioner was represented by counsel at the hearing.  *Id.*

At the time of the hearing, Petitioner was 38 years old.  (AR 39).  She has a high school education and past work experience as a mortgage loan officer, sales representative, and mail clerk. (AR 39, 59-60, ).  In general, Petitioner testified that she is unable to work due to severe bipolar disorder with symptoms of racing thoughts, stress, anxiety, and anger control.  (AR 42-46).  Petitioner also testified that her medications do not control her symptoms.  (AR 43).

On April 8, 2008, the ALJ issued a decision denying Petitioner's claim.  (AR 6-17). Petitioner appealed the ALJ's decision to the Appeals Council (AR 4) and, after the appeal was denied (AR 1-3), filed a timely Petition for Review in the United States District Court for the District of Idaho.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

**MEMORANDUM DECISION AND ORDER- p. 2**

With respect to questions of fact, this Court's task is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984); and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457.

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act ("Act") is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a five-step sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997). The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b).

**MEMORANDUM DECISION AND ORDER- p. 3**

In the instant action, the ALJ concluded that Petitioner has engaged in substantial gainful activity since her alleged onset date.  (AR 11).  The ALJ found, based on Petitioner's testimony, that Petitioner worked as a mail opener for the Department of Health and Welfare between May 2007 and February 1, 2008 and earned approximately $400.00 per week for such services.  *Id.* The ALJ further found that $400.00 per week is above the regulatory level necessary to establish "substantial gainful activity" pursuant to 20 CFR § 404.1574.  *Id.*

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  Here, the ALJ found that Petitioner is severely impaired by bipolar disorder.  (AR 11).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal the requirements for a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).  In this respect, the ALJ reviewed the listing requirements under 12.04 for affective disorders and determined that Petitioner's impairment does not meet or medically equal a listed impairment in Appendix 1, Subpart P, Regulation No. 4.  (AR 11).

The fourth step requires the ALJ to determine whether the claimant's residual functional capacity is sufficient to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, the ALJ found that Petitioner has the residual functional capacity to perform work at all exertional levels, provided that the work does not involve more than minimal contact with the general public or high levels of concentration on more than an occasional basis.  (AR 13).  Accordingly, the ALJ concluded that Petitioner is capable of performing her past relevant work.  (AR 16).

**MEMORANDUM DECISION AND ORDER- p. 4**

In the fifth and final step of analysis, if it has been established that a claimant can no longer perform past relevant work, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  In the instant case, the ALJ did not go through the fifth step, because he found that Petitioner is capable of performing her past relevant work as a mail clerk.

**B.      Petitioner's Issues with the ALJ's Decision**

Petitioner raises five issues with the ALJ's decision and contends: (1) the record supports a finding that Petitioner meets the listing criteria for bipolar disorder; (2) the ALJ improperly rejected the opinion of Petitioner's treating psychiatrist; (3) the residual functional capacity finding is not supported by substantial evidence in the record; (4) the ALJ improperly concluded that Petitioner's can perform her past relevant work as a mail clerk; and (5) the ALJ improperly rejected Petitioner's testimony.  *Petitioner's Brief in Support of Petition for Review*, p. 7 (Docket No. 13).  These arguments are interrelated; however, each issue is addressed in the following analysis.

**1.      The ALJ's Decision to Reject the Opinion of Petitioner's Treating Physician and Find Petitioner Does Not Meet a Listing Are Supported by Substantial Evidence in the Record.**

Petitioner raises two related issues with regard to the ALJ's analysis at step three of the five-step process.  Petitioner argues that the ALJ erred in rejecting the opinion of Petitioner's treating psychiatrist, Michele Boyer, MD, and the ALJ erred in finding that Petitioner meets the requirements for Listing 12.04.  As explained more fully below, the Court finds that there is

**MEMORANDUM DECISION AND ORDER- p. 5**

conflicting evidence in the record concerning the severity of Petitioner's mental disorder. Nevertheless, the ALJ's decision to reject Dr. Boyer's opinion is without error, in that his finding that Petitioner does not meet a listing is supported by substantial evidence in the record. Therefore, the ALJ's decision must stand.

### a.   The ALJ's Decision to Reject the Treating Physician's Opinion

Generally, the opinion of a treating physician[1] is entitled to considerable weight.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  However, a treating physician's opinion is not conclusive either as to the petitioner's condition or the ultimate issue of disability.  *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  A treating physician's opinion may be rejected if contradicted by another doctor's opinion provided that the ALJ gives "specific and legitimate reasons" for doing so that "are supported by substantial evidence" in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.2005).  If not contradicted by another physician's opinion, the treating physician's opinion may be rejected only for clear and convincing reasons.  *Lester*, 81 F.3d at 830.

Where, as here, the ALJ rejects the opinion of a treating physician, at least in part, based on the opinion of a consulting physician, there must be additional evidence in the record to support the decision.  "The opinion of a nonexamining physician alone cannot by itself constitute substantial evidence that justifies the rejection of either an examining physician or a treating physician."  *Id.* at 831.  However, a nonexamining physician's opinion, when supported by additional evidence in the record, may provide a sufficient a sufficient basis for rejecting a

---

[1]  For purposes of this opinion, the terms "physician" and "doctor" include psychologists and other mental health professionals.  *See Lester* v. *Chater*, 81 F.3d 821, 830 n. 7 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527).

**MEMORANDUM DECISION AND ORDER- p. 6**

treating physician's opinion.  *Maggalanes*, 881 F.2d at 752; *Saelee v. Chater*, 94 F.3d 520, 522

(9th Cir.1996)("the findings of a nontreating, nonexamining physician can amount to substantial

evidence, so long as other evidence in the record supports those findings.")

In the instant case, the ALJ rejected Dr. Boyer's opinion and relied, instead, on the

conflicting testimony from a nonexamining expert, which the ALJ found more consistent with

the record as a whole.  (AR 13).  While the outcome may have been different if the Court were

the fact finder, the ALJ did not err in rejecting the treating physician's opinion.  As explained

more fully below, the ALJ's decision is based on specific and legitimate reasons supported by

substantial evidence in the record.

Petitioner's treating physician, Dr. Boyer, submitted a Psychological Review Technique

form indicating that Petitioner met all of the criteria for listing under 12.04 for affective

disorders.  (AR 221-35).  The ALJ gave Dr. Boyer's ultimate opinion "very little weight,"

because of "the conclusory nature of her opinions and the inconsistencies between her opinions

and the other medical evidence of record, including her own treatment notes."  (AR 13).  The

ALJ also noted:

> Dr. Boyer rarely performed any type of mental status examination
> or other type of testing during her treatment of the claimant, and
> she apparently relied quite heavily on the subjective reports of
> symptoms and limitations provided by the claimant, and seemed to
> uncritically except [sic] as true most, if not all, of what the
> claimant reported.

(AR 15).  The ALJ further noted:

> [A]fter Dr. Boyer completed a psychiatric review technique form
> indicating that the claimant was unable to work due to depression,
> mood swings, and panic attacks, there is nearly a four month long
> gap in the claimant's mental health treatment, suggesting that
> severity [sic] of the claimant's symptoms was limited.

(AR 16).

**MEMORANDUM DECISION AND ORDER- p. 7**

The above reasons are sufficiently specific and legitimate to support a rejection of Dr. Boyer's opinion.  Moreover, the reasons provided are supported by substantial evidence in the record, cited within the decision.

Petitioner argues that the ALJ's reasoning is not persuasive.  First, Petitioner contends that Dr. Boyer's treatment notes may appear inconsistent, because they reflect occasional improvements in Petitioner's functioning; however, Petitioner contends the over-all picture reflects Dr. Boyer's opinion that Petitioner is disabled by her bipolar disorder.  *Petitioner's Brief in Support of Petition for Review*, p. 7 (Docket No. 13).  Second, Petitioner contends that it was improper for the ALJ to consider a four-month treatment gap in Petitioner's mental health records as an indication that Petitioner's mental status had improved.  *Id.* at p. 10.  Third, Petitioner contends that Dr. Boyer's conclusions are not just a reflection of Petitioner's subjective complaints but are also consistent with at least three psychiatric evaluations and the testimony of Dr. Dennis.  *Id.* at p. 11.

### i.      Dr. Boyer's Treatment Notes

A review of the treatment notes reflects that Petitioner's condition was a changing landscape, as she showed periods of stability and signs of  progress tempered by periods of greater stress, anxiety and inability to cope.  Nonetheless, it was reasonable for the ALJ to infer from these notes that the Petitioner's impairment was not so unrelenting and severe as to meet the listing requirements.  It was also reasonable for the ALJ to conclude that Petitioner's condition is amenable to treatment.  Though Petitioner reported a high degree of stress and anxiety, as reflected in Dr. Boyer's notes, the ALJ did not err in concluding that these same notes reflect a level of functioning inconsistent with Dr. Boyer's ultimate opinion concerning Petitioner's level of impairment.

**MEMORANDUM DECISION AND ORDER- p. 8**

## ii.        Four-Month Gap in Treatment

Given the facts in Petitioner's treatment history, it was permissible for the ALJ to consider the gap in treatment as a reflection of Petitioner's over-all improvement.  As Petitioner correctly notes, there is case law in the Ninth Circuit holding that lack of treatment does not necessarily reflect an innocuous or less than severe impairment.  Mental illnesses, in particular, are often under-reported because those afflicted do not often recognize or seek treatment when they should.  *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).  However, this template does not readily apply on the instant facts.

Here, Petitioner sought treatment continuously for just over a year before her four-month treatment gap.  Between August 3, 2005 and September 12, 2006, Petitioner saw her treating psychiatrist, Dr. Boyer, regularly (AR 196-218).  During this time, she sometimes struggled to find effective medication, or to take medication as prescribed, to alleviate her symptoms.  However, there were periods of improved mental health including an appointment on September 12, 2006, in which Dr. Boyer noted that Petitioner "is real even keel now although she is smiling.  She is boisterous, not depressed but she does not appear manic and reports her racing thoughts are pretty much resolved."  (AR 196).   Dr. Boyer noted that Petitioner "actually interviewed for a job and they are doing a background check.  She has not received an actual offer yet but she is hoping for one."  (AR 196).  After this positive visit, the evidence reflects a four-month treatment gap until February 15, 2007.  (AR 237).  It was reasonable for the ALJ to infer from these facts that the four-month lapse in treatment reflected a period of improved mental health and belies Dr. Boyer's opinion, dated prior to the gap in treatment, that characterizes the severity of Petitioner's impairment as meeting the listing requirements for

**MEMORANDUM DECISION AND ORDER- p. 9**

affective disorders.  Similarly, it appears that the Petitioner's improved functioning was contemporaneous with arguably better circumstances in what otherwise had been an often challenging milieu in her personal life.

### iii.    Treatment Notes Lack Objective Analysis

Finally, although this Court might not have reached the same conclusion, it was not unreasonable for the ALJ to conclude that Dr. Boyer's treatment notes lack objective analysis. While the Court is struck by the diligence and effort reflected by Dr. Boyer's chart notes, the ALJ could have reasonably concluded that the notes recorded Petitioner's thoughts without sufficient objective analysis.[2]  Moreover, contrary to Petitioner's argument, the three psychiatric evaluations Petitioner cites are not entirely consistent with Dr. Boyer's ultimate opinion concerning Petitioner's disability and may be reasonably interpreted to support the ALJ's determination.

First, Petitioner cites to treatment notes from a nurse (AR 214).  However, these treatment notes are a straight recital of Petitioner's reported symptoms without any objective analysis.  (AR 214).

---

[2]    The Court is constrained by its "review and deference" role in making its decision in this appeal, and as to this particular part of the administrative record likely would have concluded differently than the ALJ had the matter been before this Court for the initial fact-finding decision.  In particular, the Court would have given more weight to Dr. Boyer's opinions, for the reason that the Court recognizes that psychiatrists employed by the Idaho Department of Health and Welfare, or any state mental health treatment agency for that matter, are generally faced with trying to meet the treatment needs of far more patients than an ideal caseload might contain.  It should not be surprising, therefore, that treatment and diagnosis decisions are described in a more conclusory fashion than not in treatment notes–the press of time and the patient load simply do not allow for closely-detailed descriptions of the thought process of the psychiatric physician.  Even so, the particular details of the Petitioner's circumstances and emotional and physical condition in Dr. Boyer's notes are detailed and sensible.  The fact of such detail on those subjects would, in this Court's opinion, give more credence to Dr. Boyer's ultimate opinions–even if not explained in a point-to-point fashion–than the ALJ determined was due.

**MEMORANDUM DECISION AND ORDER- p. 10**

Second, Petitioner cites to a psychiatric evaluation performed by Dr. Boyer (AR 217) as support for Dr. Boyer's ultimate opinion on Petitioner's degree of impairment. However, aspects of Dr. Boyer's psychiatric evaluation dated August 3, 2005 undermine her ultimate conclusion regarding the degree of Petitioner's disability. (AR 216-18). In this opinion, Dr. Boyer states that Petitioner "is not taking care of herself," then quotes the Petitioner as stating, "I do not do my nails. I do not tan and I went to Fantastic Sam's to get my hair cut." (AR 217). While Petitioner may not be meeting her own standards for personal grooming, the ALJ could reasonably conclude that not having manicures and time in a tanning bed, or getting her haircut at an inexpensive salon, does not evidence an inability to "tak[e] care of herself." However, based on these and other facts, Dr. Boyer concluded that Petitioner had a Global Assessment of Functioning ("GAF") of 50, indicating serious symptoms or a serious impairment.[3] The ALJ discounted that opinion, based upon his view that there was disconnect between the facts and analysis, and therefore he chose to give Dr. Boyer's opinions less credence, for the reasons he described.

Finally, an intake assessment form completed by case manager, Elagrace Lyerla (AR 249), is also inconsistent with Dr. Boyer's analysis. Lyerla noted that Petitioner is "tearful and vague in describing her symptoms," did not appear delusional, was attentive, was oriented with intact memory, and no thought disturbances were noted. (AR 248-49). Therefore, while Petitioner was "quite anxious and dramatic," Lyerla assessed Petitioner with a GAF of 55, indicating moderate difficulties or symptoms,[4] an analysis in conflict with Dr. Boyer's ultimate

---

[3] *See* American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000).

[4] *See* American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000).

**MEMORANDUM DECISION AND ORDER- p. 11**

opinion regarding the severity of Petitioner's complaints and consistent with the ALJ's analysis of Petitioner's symptoms.

Hence,  the ALJ's decision to reject Dr. Boyer's opinion was not in error.  The ALJ provided specific and legitimate reasons for discounting Dr. Boyer's opinion, and these reasons are supported by substantial evidence in the record.

> **b.    There is Substantial Evidence in the Record to Support the ALJ's Finding that Petitioner Does Not Meet the Listing Requirements for Affective Disorders.**

The ALJ weighed the evidence in light of the Part B and Part C criteria for Listing 12.04 and found that Petitioner did not meet either set of criteria.  (AR 11-13).  When considering each of the Part B criterion, the ALJ made specific reference to evidence in the record (AR 11-12) and also indicated that these findings were consistent with Dr. Dennis' testimony.  (AR 13).

To satisfy the Part B criteria for listing under 12.04, Petitioner must have at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration.  *See* 20 C.F.R. pt. 404, subpt. P, app.1.  The ALJ found that Petitioner did not have marked limitations in any of these areas.  Each of his findings is supported by citations to the record.

First, the ALJ found that Petitioner has mild restrictions of activities of daily living.  In doing so, the ALJ focused on treatment notes that indicated some difficulties with grooming at times, and Petitioner's Function Report, dated June 10, 2006 that "reveals that Petitioner takes care of her son, does laundry, mows the yard, and essentially has no problems with personal care" (AR 118-125).  Even though there is evidence that might support a different conclusion, the evidence relied upon by the ALJ, when considered in light of the record as a whole,

**MEMORANDUM DECISION AND ORDER- p. 12**

constitutes substantial evidence in support of the ALJ's finding that Petitioner's restrictions of activities of daily living are not "marked," as required for listing.

Second, the ALJ found Petitioner has moderate restrictions in social functioning.  The ALJ noted that Petitioner worked for a significant period of time and told her psychiatrist in May 2007 that she wanted to work with people because her filing position was not very stimulating (AR 240).  This evidence, considered in light of the record as a whole, constitutes substantial evidence in support of the ALJ's finding that Petitioner's restrictions in social functioning are not "marked," as required for listing.

Third, the ALJ found that Petitioner has moderate difficulties with concentration, persistence and pace.  The ALJ relied on the notes of consulting psychiatrist, Dr. Harry Silsby, M.D., who examined Petitioner in August 2006 and noted that claimant's judgment was intact, her perceptions were normal, and her memory was intact (both remote and recent) (AR 174-77).  Dr. Silsby also evaluated Petitioner to have a GAF of 60.  This is generally consistent with the intake evaluation completed by Elagrace Lyerla, though she evaluated Petitioner to have a GAF of 55.  This evidence, considered in light of the record as a whole, constitutes substantial evidence in support of the ALJ's finding that Petitioner's difficulties with concentration, persistence, and pace are not "marked," as required for listing.

Fourth, the ALJ found that Petitioner has suffered no more than one or two episodes of decompensation.  The ALJ noted that there is no evidence that Petitioner has had any hospitalizations for her mental impairment since her alleged onset date, although the records reveal instances when Petitioner became more symptomatic and required medication adjustments.  This evidence, considered in light of the record as a whole, constitutes substantial

**MEMORANDUM DECISION AND ORDER- p. 13**

evidence in support of the ALJ's finding that Petitioner has not experienced repeated episodes of decompensation, each of extended duration.

In short, the ALJ provided sufficient support for his findings regarding the B-criteria for listing under 12.04 for affective disorders.  These findings support the ALJ's conclusion that Petitioner's impairment is not so severe as to meet the listing standards under the Part B criteria.

The ALJ also found that the evidence in the record was insufficient to support a listing under the Part C criteria.  (AR 12-13).  To satisfy the Part C criteria for listing under 12.04, Petitioner must have:

> [1] a "[m]edically-documented history of a chronic affective disorder of at least [two] years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support; and [2] one of the following: [a] repeated episodes of decompensation each of extended duration; [b] a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or [c] a current history of [one] or more years' inability to function outside a highly supportive living arrangement, with an indication or continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app.1.

Petitioner argues that the ALJ's conclusion regarding the Part C criteria is inconsistent with the testimony of the medical expert, Dr. Michael Dennis, Ph.D.  However, Dr. Dennis' testimony with regard to this issue can be reasonably interpreted to support the ALJ's conclusion.

Dr. Dennis testified that the first part of the C criteria was met- i.e., Petitioner has a "[m]edically-documented history of a chronic affective disorder of at least [two] years' duration

**MEMORANDUM DECISION AND ORDER- p. 14**

that has caused more than a minimal limitation of ability to do basic work activities, with

symptoms or signs currently attenuated by medication or psychosocial support." (AR 36-7).

The ALJ did not address this requirement. Instead, he focused upon the remaining criteria:

> [T]here is no evidence of repeated episodes of decompensation,
> and the absence of such episodes and the claimant's ability to work
> last year demonstrate the lack of a residual disease process that has
> resulted in such marginal adjustment that even a minimal increase
> in mental demands or environmental changes would be predicted
> to result in decompensation. Finally, there is no history of an
> inability to function outside a highly supportive living
> arrangement.

(AR 13).

In the main, Dr. Dennis' testimony supports the ALJ's findings. Dr. Dennis affirmatively

rejected the first and three elements of the second set of criteria, without question, testifying as

follows:

> I lack the evidence to say we have repeated episodes of
> decompensation each of extended duration as we've been defining
> decompensation. That's something that's on that more severe side
> where you might require hospitalization or something like that.
> Number three, I don't have the evidence to endorse number three
> on that.

AR (37). Nonetheless, Dr. Dennis did waffle a bit on the second criteria, and his testimony on

this subject is not entirely clear, as he appeared to grapple with an appropriate recommendation:

> Now, number two, process that's resulted in such marginal
> adjustment that even a minimal increase in mental demands or
> change would be predicted to cause the individual to
> decompensate, was one that, as I was reading through the evidence
> I was considering because on the one hand since she's begun
> working we have comments from her psychiatrist that indicate . . .
> once she went up from 20 hours to full-time 40 hours a week, she's
> been doing significantly worse. . . . And so, in one sense, I begin to
> wonder, gosh, is this somebody who maybe just can't handle the
> stress of work, but part of the challenge of endorsing that, as well

**MEMORANDUM DECISION AND ORDER- p. 15**

> as, . . . this Claimant's been - - in terms of my reading of the evidence, gainfully employed for some months now, and admittedly is experiencing some difficulties, and yet is still working and keeping her job. And I just don't know what the situation is . . . . For example, is this an extremely stressful job that would, you know, be providing most people with some trouble, or is this a very simple job where most people would do fine and she can't even do simple work. I just don't have that kind of information to endorse that number two.

(AR 37-38).

Seizing upon this language, Petitioner argues that the job was simple; therefore, Dr. Dennis' testimony supports the conclusion that she meets the listing requirement. *Petitioner's Brief in Support of Petition for Review*, p. 11 (Docket No. 13). However, the ALJ is charged with resolving any ambiguities in the record, including the arguably equivocal testimony of Dr. Dennis. Moreover, the ALJ did not rely upon Dr. Dennis' testimony alone; he also relied on the facts that there is no evidence of repeated episodes of decompensation and Petitioner worked, to some degree of success, in 2007. (AR 13). In addition, the ALJ more generally noted that the following facts suggested Petitioner's impairment was not at a level of severity sufficient to constitute disability: (1) there is a four-month gap in Petitioner's mental health treatment; (2) Petitioner is able to perform most of her activities of daily living; (3) Petitioner is able to care for her son; and (4) Petitioner was able to perform consistent, full-time work for approximately nine months (AR 13, 16). These facts are supported by the record and constitute substantial evidence to support the ALJ's decision.

The ALJ also considered the portions of Dr. Boyer's treatment notes indicating that Petitioner did relatively well while working. These treatment notes also support a reasonable conclusion that any increases in stress and anxiety appear to be related to increased stressors outside of work, not just a minimal increase in mental demands or change in the environment.

**MEMORANDUM DECISION AND ORDER- p. 16**

Between May and September 2007, the medical records reflect that Petitioner struggled with anxiety and irritability while working but managed to get by fairly well. (AR 237-40, 257). On July 12, 2007, Dr. Boyer noted, "Right now she is working 40 hours a week and seems to be able to handle that." (AR 238). Even in September 2007, Dr. Boyer noted that Petitioner, though reportedly stressed at work and very irritable, "is pleasant in the interview but she reports she is very down and irritable." (AR 257).

On October 25, 2005, Dr. Boyer's treatment notes reflect an increase in Petitioner's feelings of anxiety and irritability. However, it does not appear that these feelings were necessarily the result of "minimal increase in mental demands or change" occasioned by her work as a mail clerk. Rather, Petitioner reported that "[s]he broke up with her boyfriend, her dog is dying, her son is not doing well in school because she is not home, and her ex is dying." (AR 254). In addition, by October 31, 2007, Petitioner appears to have rebounded as she "appears brighter" and "is not complaining of any sleep difficulties of manicky [sic] symptoms." (AR 253).

Similarly, in January 2008, Petitioner again began reporting an increased level of stress and anxiety. (AR 262). However, she reported that she was engaged and either suffered a miscarriage and/or terminated a pregnancy (possibly both). (AR 262, 266, 268). It is entirely reasonable for the ALJ to conclude from such facts that Petitioner was experiencing significant life stresses apart from work and do not necessarily suggest that Petitioner's increased symptoms and need for increased medication resulted from a "minimal increase in mental demands or change."

Moreover, it should be noted that working as a mail clerk may, at first blush, appear less stressful than Petitioner's former work. However, Petitioner reported to Dr. Boyer in May 2007

**MEMORANDUM DECISION AND ORDER- p. 17**

that working as a file clerk was "boring" and "not very stimulating." (AR 240). For these reasons, Petitioner reported that she was looking for different work that involved more interaction with people. *Id.* In June 2007, Dr. Boyer noted that Petitioner's stress "has a lot to do with her making $10 an hour. She no longer feels any freedom to spend. She is very strapped for cash." (AR 239). Also, in July 2007, Dr. Boyer noted that Petitioner has "some self-reproach about not making 120K [sic] a year like she did a few years ago." (AR 238).

Ultimately, the ALJ is charged with resolving ambiguities and inconsistencies in the evidence. While Dr. Dennis' testimony was not entirely clear, the ALJ is charged with resolving the ambiguity, and Dr. Dennis' testimony, combined with other facts in the record, provides substantial evidence in support of the ALJ's finding that Petitioner does not meet a listing under either the B or C criteria for affective disorders.

>   **2.     The ALJ Rejection of Petitioner's Testimony Regarding the Severity of Her Symptoms and the Residual Functional Capacity Finding Are Supported by Substantial Evidence in the Record.**

Petitioner argues that the ALJ should have included additional, non-exertional limitations in the residual functional capacity determination. *Petitioner's Brief in Support of Petition for Review*, p. 14 (Docket No. 13). Based, on Dr. Boyer's opinion and Petitioner's testimony, Petitioner argues that she is unable to perform a simple, unskilled job on a consistent basis. *Id.* As part of this issue, Petitioner asks the Court to review the ALJ's conclusion that Petitioner lacked credibility. *Id.* at pp. 14-15.

The ALJ must conduct a two-part inquiry when determining the credibility of a claimant's subjective testimony concerning the severity of her symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably

**MEMORANDUM DECISION AND ORDER- p. 18**

be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (citing *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)(en banc)).  "Second, if the claimant meets the first

test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about

the severity of her symptoms only by offering specific, clear and convincing reasons for doing

so.'" *Id.* (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  In conducting this second

inquiry, the ALJ may consider:

> (1) ordinary techniques of credibility evaluation, such as the
> claimant's reputation for lying, prior inconsistent statements
> concerning the symptoms, and other testimony by the claimant that
> appears less than candid; (2) unexplained or inadequately
> explained failure to seek treatment or to follow a prescribed course
> of treatment; (3) the claimant's daily activities; and (4) medical
> evidence tending to discount the severity of subjective claims.

*Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Tommasetti v. Astrue*; 533 F.3d 1035,

39 (9th Cir. 2008).

     Here the ALJ determined that Petitioner had sufficient objective evidence of an

underlying impairment, specifically affective disorder, which could reasonably be expected to

produce the symptoms alleged.  (AR 14).  However, the ALJ ruled that Petitioner's "statements

concerning the intensity, persistence and limiting effects of these symptoms are not credible to

the extent they are inconsistent with the residual functional capacity assessment. . . ." *Id.*  Thus,

the reasons the ALJ relied upon to reject Petitioner's testimony are essentially the same as those

provided in support of the residual functional capacity determination.  This reflects the ALJ's

determination that Petitioner is able to function at a higher level than she reports she can.

     In support of his findings concerning Petitioner's credibility and her residual functional

capacity, the ALJ cites the following facts supported by citations to the record:

**MEMORANDUM DECISION AND ORDER- p. 19**

(1)  The earliest medical record in Petitioner's file, from August 2005, reflect that Petitioner's symptoms were limited, as she was able to work until her "employer was being shut down for fraud," a reason not related to her impairment.  (AR 128, 216-18).

(2)  Petitioner's description of her symptoms has been "vague and general, lacking the specificity which might otherwise make it more convincing."  (AR 196-218, 259-64).

(3) Petitioner's activities "are not limited to the extent one would expect given her complaints of disabling symptoms and limitations."  For example, Petitioner lives alone with her ten year-old son; and there is evidence in the record of her gardening, doing taxes, and showing a house.  (AR 196-218).

(4) Petitioner worked for nine months as a mail clerk.

(5) Petitioner's on-going medical treatment with Dr. Boyer reflects that Petitioner's bipolar disorder is amenable to treatment, though her medications must be changed periodically.  In support of this conclusion, the ALJ cites Dr. Boyer's treatment notes, the medical expert's testimony, and the opinion of consultative expert, Dr. Harry D. Silsby, M.D. (AR 174-77).

(6) With regard to Petitioner's testimony specific to her problems with anger control, the ALJ concluded that such testimony was inconsistent with her treatment records.  In addition, though Petitioner testified that she was terminated from her mail clerk job due to anger problems, there is no support for this in the record. Instead, there is a termination letter from her employer, which states only that the employer "no longer requires your services as a temporary employee."  (AR 160).

(7) With regard to Petitioner's testimony specific to difficulty concentrating, the ALJ notes that the treatment records reflect that her thought processes are logical and linear.  In support of this finding, the ALJ cites to Dr. Boyer's treatment notes; Dr. Silsby's examination; and Petitioner's activities of daily living.

(AR 14-16).

 This analysis reflects that the ALJ put considerable time and effort into this decision and found clear and convincing reasons to reject Petitioner's testimony concerning the level of

**MEMORANDUM DECISION AND ORDER- p. 20**

severity of her impairment.  In addition to these facts, there are other facts in the record to support the ALJ's conclusion regarding Petitioner's credibility.  For example, there are medical records that suggest Petitioner did not follow the prescribed treatment of treating physician, Dr. Boyer, who repeatedly noted that Petitioner did not take prescriptions as directed (AR 198, 200, 201, 202, 203, 206, 214, 215, 266).  In addition, Petitioner provided conflicting testimony on the reason she left her job in California, stating that she could not work due to disability and also stating that she left her job, because her employer was being investigated for fraud and to move to Idaho to be closer to her son's dying father.  (AR 14, 128).  This evidence provides further support for the ALJ's finding that Petitioner is not wholly credible.

Petitioner focuses on different facts to support her conclusion that she requires additional restrictions in her residual functional capacity.  These facts include Petitioner's testimony and that of Dr. Boyer.  *Petitioner's Brief in Support of Petition for Review*, pp. 14-15 (Docket No. 13).  However, the ALJ discounted Petitioner's testimony and Dr. Boyer's opinion.  The ALJ's decision in that regard was based, in part, upon the his conclusion that Dr. Boyer's opinion merely reflected Petitioner's subjective report of symptoms and limitations and lacked sufficient objective analysis.  (AR 15-16).  Furthermore, while the ALJ's conclusions may be in conflict with this evidence, a  review of the entire record reflects that the ALJ's findings, concerning Petitioner's credibility and her residual functional capacity, are supported by substantial evidence in the record and where the evidence is subject to more than one reasonable interpretation, the Court must defer to the ALJ's findings.

### 3.    The ALJ's Finding that Petitioner Is Able to Perform Her Past Relevant Work as a Mail Clerk is Supported by Substantial Evidence.

Petitioner has the burden of demonstrating that she can no longer perform past relevant work.  *See* 20 C.F.R. § 404.1512(a), 404.1520(f); *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

Past relevant work is work a claimant performed in the past 15 years, that was substantial gainful activity, and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 n. 10 (9th Cir. 2008). If a job can be characterized as past relevant work and if the claimant has the residual functional capacity to perform such work, then the claimant is deemed not disabled. 20 C.F.R. § 1520(a)(4)(iv); *Bray*, 554 F.3d at 1219 n. 11.

Petitioner does not argue that her work as a mail clerk is not past relevant work; she argues that she cannot perform the job. *Petitioner's Brief in Support of Petition for Review*, p. 19 (Docket No. 13). In determining Petitioner's ability to perform past relevant work, the ALJ must conduct a two-step analysis: (1) determine the claimant's residual functional capacity and (2) compare this residual functional capacity with the requirements of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv); *Bray*, 554 F.3d at 1219 n. 11. In addition, the ALJ may "use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor." 20 C.F.R. § 404.1560(b)(2).

Here, the ALJ followed the appropriate analysis. First, he determined Petitioner's residual functional capacity. Second, he referred to the 1991 Revised Dictionary of Occupational Titles, the 1998 update, and data from the Bureau of Labor Statistics, which indicate that an individual with Petitioner's residual functional capacity should be able to perform the job of "mail clerk" (AR 16-17).

Petitioner objects to the ALJ's finding that she is able to perform this past work, because: (1) she obtained the position through the Department of Health & Welfare as a recipient of

**MEMORANDUM DECISION AND ORDER- p. 22**

benefits; (2) she had difficulty performing the job; and (3) was terminated from the position.

These arguments are not persuasive.  The reason Petitioner obtained the job is of no moment,

particularly if the record illustrates, as it does here, that there was substance to the job.  Rather,

the relevant issue is whether she can perform it given her residual functional capacity.

Moreover, while Dr. Boyer's treatment notes reflect that Petitioner's symptoms of depression,

anxiety and stress increased while she was working full-time and she experienced interpersonal

problems with her co-workers, these records also reflect that Petitioner had considerable

situational stress in her life at that time, separate and apart from her problems at work.  In

addition, despite Petitioner's reported problems at work, the ALJ was more persuaded by the

facts that Petitioner, though stressed, actually performed the job "on a consistent and full-time

basis for approximately nine months" and left the position "due to a layoff and not as a result of

any allegedly disabling impairments."  (AR 15).

Ultimately, where there is conflicting evidence in the record but substantial evidence to

support the ALJ's decision, the Court must defer to the ALJ.  Because the ALJ's decision with

regard to Petitioner's ability to perform her past relevant work is based on proper legal standards

and supported by substantial evidence in the record, it will not be disturbed on appeal here.

### IV.  CONCLUSION

The Court is satisfied that the ALJ's decision is free from legal error and supported by

substantial evidence in the record.  While the Petitioner may dispute the ALJ's findings and

emphasizes conflicting evidence in the record, the ALJ is charged with resolving these conflicts

and any ambiguities in the record, and the Court may not substitute its opinion for that of the

ALJ.  Instead, the Court's job is to ensure that the proper legal standards are applied and the

**MEMORANDUM DECISION AND ORDER- p. 23**

decision is supported by evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  Accordingly, the Commissioner's decision denying benefits must be affirmed.

### V.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED and Petitioner's Petition to Review (Docket No. 1) is DENIED.  This case shall be DISMISSED, with prejudice.



DATED:  **March 31, 2010**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER- p. 24**